## S03A0613. DILL v. THE STATE.
(587 SE2d 56)

FLETCHER, Chief Justice.

A jury in Putnam County convicted Myran Louis Dill of two counts of malice murder, two counts of felony murder, burglary, armed robbery, and theft by taking in the shooting deaths of Marcus Hill and Angela Lawson.[1] Because we find that the trial court erred by failing to recharge the jury on crucial elements of Dill's defense after being requested by the jury to do so, we reverse and remand for a new trial.

1. The evidence presented at trial shows that in September 1995, Dill and three accomplices traveled from Atlanta to Eatonton, where they planned to arrange a drug purchase from the victims and then rob them. After the group encountered some difficulties in arranging the drug purchase, three of the accomplices, including Dill, suggested that the group return to Atlanta. A fourth accomplice, Devon Jones, threatened to kill the others if they refused to continue with the planned robbery.

The accomplices drove to the victims' neighborhood and stopped the car a short distance from the victims' house. Jones allegedly then forced Dill and another accomplice to take a weapon and accompany him into the victims' house. Dill carried a shotgun. After a few minutes, Dill and another accomplice returned to the car and told the fourth accomplice that Jones had struck one of the victims in the head with his gun and was binding the victims with duct tape. Jones then rejoined the other accomplices driving a car he had stolen from one of the victims. The other accomplices asked Jones if he had shot anybody, but Jones denied doing so. The group then returned to Atlanta in Jones' car and the stolen car.

Both victims were later found shot in the head, and one of the victims had been beaten in the face and head. The bullets that killed the victims came from a gun like the one that was carried by Jones. Dill's fingerprints were found on the victim's car and the car the group had used to travel from Atlanta to Eatonton on the night of the crimes. The police also recovered a shotgun with a butt plate that

---

[1] The crimes were committed on or around September 11, 1995. On December 5, 1995, a grand jury indicted Dill for two counts of malice murder, two counts of felony murder, one count of burglary, one count of armed robbery, and one count of theft by taking. On June 11, 1997, the jury convicted Dill on all counts. The felony murder counts merged as a matter of law with the malice murder convictions, and Dill was sentenced to three consecutive life sentences for the murders and armed robbery, and twenty years for burglary and theft by taking, to run concurrently. Dill moved for a new trial on June 12, 1997, and amended his motion on April 15, 2002, and September 13, 2002. The trial court denied the amended motion on October 8, 2002, and Dill filed his timely notice of appeal on October 21, 2002. The case was docketed in this Court on January 2, 2003, and oral argument was heard on April 15, 2003.

was consistent with the marks on the back of one victim.

After reviewing the evidence in the light most favorable to the jury's verdict, we conclude that there was sufficient evidence for a rational trier of fact to find Dill guilty of the crimes for which he was convicted.[2]

2. Dill contends that the trial court committed reversible error by failing to adequately recharge the jury on important aspects of Dill's defense after a specific request for such a recharge from the jury. Dill's only defenses were that he was coerced into participating in the crimes by his accomplice Jones, and that he had no knowledge of the killings. Dill presented evidence that Jones threatened him with a gun after Dill tried to thwart the planned robbery. At one point, Jones fired a bullet into the windshield of the car in which Dill was riding in order to intimidate Dill and the other accomplices into carrying out the plan. There was also testimony from one of the State's witnesses that the accomplices were unaware until much later that anyone had been shot or killed. Accordingly, the effect of Dill's knowledge of the crime, if any, and presence at the crime scene, were important parts of the jury's deliberations. During those deliberations, the jury sent a note to the trial court asking the following questions:

> We need a clarification of malice murder.
> Does [Dill] have to be present — Do the deed. — Have knowledge of — to be held accountable?
> Define also — malice one more time.

A trial court has a duty to recharge the jury on issues for which the jury requests a recharge, and the trial court commits reversible error if it fails to do so.[3] In its response to the jury, the trial court reiterated the definition of malice murder but refused to recharge the jury on the issues of presence and knowledge, despite the fact that these issues were indisputably pertinent to the jury's request. By refusing the jury's specific request for clarification on issues of presence and knowledge, the trial court undercut the relevance of these issues in the jury's deliberations and effectively undermined Dill's right to have the jury fairly and completely consider these aspects of his defense.

Contrary to the State's arguments, Dill adequately preserved his objections to the recharge by reserving all objections on the record at

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).
[3] *Edwards v. State*, 233 Ga. 625, 626 (212 SE2d 802) (1975); *Glisson v. Glisson*, 268 Ga. 164, 165 (486 SE2d 167) (1997).

the time the court issued the recharge.[4] Therefore, because the trial court abused its discretion by failing to adequately address the specific issues requested by the jury, Dill's convictions must be reversed.

3. The State also argues that even if the recharge was erroneous, the error would only affect the malice murder convictions. Because the jury's questions addressed the necessary state of mind required to convict and were relevant to the jury's deliberations for all the crimes for which Dill was convicted, however, each of Dill's convictions was affected by the error. Accordingly, each of Dill's convictions must be reversed.

4. Dill contends that his trial counsel was ineffective for failing to request jury instructions related to the law of conspiracy and co-conspirator's statements. Because we reverse his convictions in Division 2, we need not address this argument.

5. Similarly, we need not decide whether Dill's trial counsel operated under an improper conflict of interest during this trial because his law partner represented an accomplice who obtained a deal from the State and testified against Dill. We do, however, express our concern over the potential dangers inherent in such a situation and the potential damage that such a scenario can cause to the integrity of the judicial system. The integrity of our system of criminal justice requires everyone involved in the judicial process, including the trial court, prosecution, and bar, to take every precaution necessary to avoid any appearance of impropriety.[5] The constitutional right to counsel includes the right to conflict free representation.[6]

6. Dill next contends that he was deprived of his constitutional right to be present at all critical stages of his prosecution when the trial judge held a bench conference to discuss the need to excuse an alternate juror. Because this situation is unlikely to recur on retrial, it need not be addressed here.

7. Finally, Dill contends that his right to be present was violated when the trial court and counsel went into the jury room to instruct the jury not to concern itself with punishment. Although it is unnecessary for this Court to determine whether this constitutes reversible error, the law requires all communications between the trial judge and the jury to take place in the open courtroom in the defendant's presence.[7]

---

[4] *McCoy v. State*, 262 Ga. 699 (425 SE2d 646) (1993).

[5] See generally *Dean v. State*, 247 Ga. 724, 725 (279 SE2d 217) (1981); *Chapel v. State*, 264 Ga. 267, 269-270 (443 SE2d 271) (1994).

[6] *Wood v. Georgia*, 450 U. S. 261, 271 (101 SC 1097, 67 LE2d 220) (1981); *Turner v. State*, 273 Ga. 340 (541 SE2d 641) (2001).

[7] *Morris v. State*, 257 Ga. 781, 784 (364 SE2d 571) (1988) ("[t]he right to a fair and impartial trial depends on the right of the accused and his counsel to be present when there are communications between the jurors and the trial judge which may materially affect his case").

*Judgment reversed. All the Justices concur.*

DECIDED OCTOBER 6, 2003.

*Brian Steel, Raymond B. Lail,* for appellant.
*Fredric D. Bright, District Attorney, Richard M. Gailey, Assistant District Attorney, Thurbert E. Baker, Attorney General, Madonna M. Heinemeyer, Assistant Attorney General,* for appellee.